**NO. 25-2191**

# United States Court of Appeals

*for the*

# Fourth Circuit

⸺⸺⬥⸺⸺

JAMES MEBANE, on behalf of themselves and all others similarly situated,

*Plaintiff-Appellant,*

– and –

ANGELA WORSHAM, on behalf of themselves and all others similarly situated,

*Plaintiff,*

– v. –

GKN DRIVELINE NORTH AMERICA, INC.,

*Defendant-Appellee.*

⸺⸺⸺⸺⸺⸺

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AT GREENSBORO

## BRIEF OF APPELLANT

GILDA A. HERNANDEZ
LAURA FISHER
THE LAW OFFICES OF
  GILDA A. HERNANDEZ, PLLC
215 South Academy Street
Cary, North Carolina 27511
(919) 741-8693
ghernandez@gildahernandezlaw.com
lfisher@gildahernandezlaw.com

*Attorneys for Plaintiff-Appellant*

**CP COUNSEL PRESS**   (800) 4-APPEAL • (814217)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-2191__        Caption: __James Mebane v. GKN Driveline North America, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__JAMES MEBANE__
(name of party/amicus)


who is _____APPELLANT_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Gilda Adriana Hernandez          Date:    10/14/2025

Counsel for: Plaintiff-Appellant

- 2 -

# TABLE OF CONTENTS

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.................................................................................1

ISSUES PRESENTED FOR REVIEW .........................................................2

STATEMENT OF THE CASE.......................................................................2

    I.     RELEVANT PROCEDURAL HISTORY..........................................2

    II.    RELEVANT FACTS ........................................................................5

        A.    Defendant-Appellee's Timekeeping Policy Mandates Plaintiffs-Appellants Record All Hours Worked and Its Compensation Policy Promises to Compensate Plaintiffs-Appellants for All Hours Worked...............................................5

        B.    Plaintiffs-Appellants Complied with Policies and Clocked In/Out, Including for Required Pre- and Post-Shift Activities. ..................................................................................6

        C.    Plaintiffs-Appellants Were Required to Engage in Pre- and Post-Shift Activities Integral and Indispensable to Their Principal Activities.................................................................7

        D.    Despite Plaintiffs-Appellants Following Defendant-Appellee's Policy to Clock In/Out for Pre- and Post-Shift Activities, Defendant-Appellee's Rounding or Time-Shaving Policy Was Used to Avoid Compensating Plaintiffs-Appellants for All Hours Worked..............................8

        E.    Plaintiffs-Appellants Regularly Worked Through Lunch Breaks and Lunch Breaks Were Automatically Deducted From Plaintiffs-Appellants' Pay. ..............................................11

SUMMARY OF ARGUMENT ...................................................................12

ARGUMENT ..............................................................................................16

    I.     STANDARD OF REVIEW ............................................................16

i

A. Standard of Review Upon a Defendant's Motion to Decertify a Rule 23 Class ........................................................16

B. Standard of Review Applied in Decertifying an FLSA Collective Action ................................................................19

II. THE DISTRICT COURT ERRED IN DECERTIFYING PLAINTIFFS-APPELLANTS' ROUNDING CLASS BY IMPROPERLY EQUATING THE STANDARD FOR DECERTIFYING A COLLECTIVE ACTION UNDER THE FLSA WITH THE STANDARD FOR DECERTIFYING A CLASS ACTION PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE ................................21

A. The Decertification Standard for an FLSA Collective Action is Separate and Distinct from the Rule 23 Class Decertification Standard. ........................................................22

B. The District Court Improperly Applied the Standard for FLSA Collective Action Decertification to Decertify the Rule 23 Rounding Class..............................................................24

C. The District Court Previously Certified the Rounding Class Using the Proper Rule 23 Standard and Defendant-Appellee Failed to Meet the Onerous Burden Required to Challenge Certification. ............................................................27

III. THE DISTRICT COURT ERRED BY PREMATURELY DECERTIFYING THE AUTOMATIC DEDUCTION CLASS WITHOUT ALLOWING NAMED PLAINTIFFS TO DISTRIBUTE NOTICE PURSUANT TO RULE 23(C)(2)(B)..................................................................................31

A. District Courts Should Not Delay Notice of Class Certification. ...........................................................................31

B. Despite Certifying the Automatic Deduction Class Pursuant to Rule 23 (b), the District Court Delayed Notice of Class Certification. ..............................................................33

ii

IV. THE DISTRICT COURT ERRED IN DECERTIFYING THE AUTOMATIC DEDUCTION CLASS BY RELYING OVERWHELMINGLY ON DECLARATIONS FROM OPT OUT INDIVIDUALS WHOSE DECLARATIONS SHOULD BE GIVEN LITTLE TO NO WEIGHT ...................................38

    A. Reliance on "Opt Out" Declarations is Disfavored. .................38

    B. Reliance on "Happy Camper" Declarations is Disfavored.......39

    C. The District Court Relied Overwhelmingly on Opt Out Individuals and "Happy Camper" Declarations to Decertify the Automatic Deduction Class. ...............................40

    D. Despite Finding Record Evidence to Support the Certification of Plaintiffs-Appellants' Automatic Deduction Class, the District Court Ignored the Same Evidence and Relied Entirely on Irrelevant Declarations from Rule 23 Class Members Who Excluded Themselves from the Action. .......................................................................42

V. THE DISTRICT COURT ERRED IN DECERTIFYING THE FLSA COLLECTIVE ACTION BY DISREGARDING COMMON EVIDENCE THAT PLAINTIFFS-APPELLANTS WERE PERFORMING COMPENSABLE WORK ................................................................................43

    A. There is Common Evidence that Plaintiffs-Appellants Performed Compensable Pre- and Post- Shift Work. ...............44

    B. The Need for Individualized Inquiries Related to Damages Does Not Preclude Certification. ...............................50

CONCLUSION ......................................................................................52

REQUEST FOR ORAL ARGUMENT ................................................53

iii

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Mgmt. & Training Corp.*,
948 F.3d 1270 (10th Cir. 2020) .................................................................... 46, 48

*Amara v. CIGNA Corp.*,
775 F.3d 510 (2d. Cir. 2014)........................................................................... 16, 17

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)......................................................................................... 39, 42

*Beale v. EdgeMark Fin.*, No.  Corp.,
No. 94-CV-1890, 1995 WL 631840 (N.D. Ill. Oct. 23, 1995) ...........................35

*Brooks v. GAF Materials Corp.*,
301 F.R.D. 229 (D.S.C. 2014) ...........................................................................27

*Brown v. Colegio de Abogados de Puerto Rico*,
613 F.3d 44 (1st Cir. 2010)...............................................................................31

*Brown v. Nucor Corp.*,
785 F.3d 895 (4th Cir. 2015)................................................................... *passim*

*Butler v. DirectSAT USA, LLC*,
47 F. Supp. 3d 300 (D. Md. 2014) ....................................................................22

*Cadena v. Customer Connexx LLC*,
51 F.4th 831 (9th Cir. 2022) ........................................................................ 46, 47

*Calderone v. Scott*,
838 F.3d 1101 (11th Cir. 2016) ................................................................... 22, 26

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) ...................................................................... *passim*

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).........................................................................................17

*Chaney v. Vermont Bread Co.*,
No. 2:21-CV-120, 2022 WL 3443973 (D. Vt. Aug. 17, 2022) ..........................32

iv

*Clark v. Williamson*,
No. 1:16-CV-1413, 2018 WL 1626305 (M.D.N.C. Mar. 30, 2018)....................23

*Day v. Celadon Trucking Servs., Inc.*,
827 F.3d 817 (8th Cir. 2016)........................................................ *passim*

*DeJulius v. New England Health Care Emps. Pension Fund*,
429 F.3d 935 (10th Cir. 2005) ....................................................................32

*DePyper v. Roundy's Supermarkets, Inc.*,
Nos. 20-CV-2317, 22-CV-2084, 2025 WL 2430460
(N.D. Ill. Aug. 22, 2025)...................................................................... 39-40

*Donovan v. Bel-Loc Diner, Inc.*,
780 F.2d 1113 (4th Cir. 1985) ...................................................................49

*Dunlop v. City Elec., Inc.*,
527 F.2d 394 (5th Cir. 1976)......................................................................46

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)..................................................................... 31, 35, 37

*EQT Prod. Co. v. Adair*,
764 F.3d 347 (4th Cir. 2014)......................................................................16

*Espenscheid v. DirectSat USA, LLC*,
705 F.3d 770 (7th Cir. 2013)............................................................... 25, 26

*Fed. Express Corp. v. Holowecki*,
552 U.S. 389 (2008).................................................................................27

*Ferreras v. Am. Airlines, Inc.*,
946 F.3d 178 (3d. Cir. 2019)......................................................................47

*Fischer v. Fed. Express Corp.*,
42 F.4th 366 (3rd Cir. 2022) .....................................................................27

*Gen. Tel. Co. of Sw. v Falcon*,
457 U.S. 147 (1982).................................................................................18

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013)...................................................................................21

*Gonzales v. Arrow Fin. Servs. LLC*,
  489 F. Supp. 2d 1140 (S.D. Cal. 2007)................................................................18

*Grunin v. Intl. House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975)............................................................ 32, 34, 36

*Gunnells v. Healthplan Servs. Inc.*,
  348 F.3d 417 (4th Cir. 2003)................................................................50

*Hale v. Brinker Intl., Inc.*,
  765 F. Supp. 3d 904 (N.D. Cal. 2025) ....................................................... 40, 41

*Halle v. West Penn Allegheny Health Sys. Inc.*,
  842 F.3d 215 (3d Cir. 2016)...................................................... 20, 44

*Hoffman-La Roche v. Sperling*,
  493 U.S. 165 (1989)................................................................20

*Houston v. URS Corp.*,
  591 F. Supp. 2d 827 (E.D. Va. 2008) .......................................................... 48, 51

*In re Citizens Bank, N.A.*,
  15 F.4th 607 (3d Cir. 2021)................................................................22

*In re Corrugated Container Antitrust Litig.*,
  756 F.2d 411 (5th Cir. 1985)................................................................39

*In Re Franklin Nat. Bank Secs. Litig.*,
  574 F.2d 662 (2d Cir. 1978).......................................................... 31, 33, 36

*Jermyn v. Best Buy Stores, L.P.*,
  276 F.R.D. 167 (S.D.N.Y. 2011) .......................................................27

*Klick v. Cenikor Found.*,
  94 F.4th 362 (5th Cir. 2024) .......................................................... 47-48, 50

*Krakauer v. Dish Network, LLC*,
  925 F.3d 643 (4th Cir. 2019)................................................................17

*LaFleur v. Dollar Tree Stores, Inc.*,
  30 F. Supp. 3d 463 (E.D. Va. 2014) .......................................................... 48, 50, 51

*Landis v. Elevance Health Cos.*,
  No. 4:23-CV-5; 2025 WL 2557193 (E.D.N.C. Aug. 22, 2025) .................... 48, 51

*Lowery v. Circuit City Stores, Inc.*,
    158 F.3d 742 (4th Cir. 1998)................................................................16

*Lyngaas v. Curaden Ag*,
    992 F.3d 412 (6th Cir. 2021).................................................................41

*Marlo v. United Parcel Serv., Inc.*,
    639 F.3d 942 (9th Cir. 2011).................................................................28

*Mazzei v. Money Store*,
    829 F.3d 260 (2d Cir. 2016)........................................................... 18, 22

*McKinney v. U.S.P.S.*,
    292 F.R.D. 62 (D.D.C. 2013).................................................................31

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012)................................................................37

*Monroe v. FTS USA, LLC*,
    860 F.3d 389 (6th Cir. 2017)........................................................ *passim*

*Morgan v. Family Dollar Stores, Inc.*,
    551 F.3d 1233 (11th Cir. 2008) ....................................... 19, 20, 21, 44

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)..................................................................20

*Nash v. Horizon Freight Sys. Inc.*,
    No. 19-CV-1883-VC, 2020 WL 7640878 (N.D. Cal. Dec. 23, 2020).................39

*O'Brien v. Ed Donnelly Enters., Inc.*,
    575 F.3d 567 (6th Cir. 2009)................................................................23

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v.*
    *Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003)........................................................... 19-20

*Pennington v. Fluor Corp.*,
    Nos. 0:17-CV-2094, 0:17-CV-2201, 2019 WL 2537674
    (D.S.C. June 20, 2019) ............................................................... *passim*

*Perez v. Mountaire Farms, Inc.*,
    650 F.3d 350 (4th Cir. 2011)....................................... 44, 45, 46, 47

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ...............................................................18

*Phillips v. Sheriff of Cook Cnty.*,
   828 F.3d 541 (7th Cir. 2016).................................................................16

*Pruess v. Presbyterian Health Plan, Inc.*,
   745 F. Supp. 3d 1218 (D.N.M. 2024). ..........................................39, 40-41, 48-49

*R&D Bus. Sys. v. Xerox Corp.*,
   150 F.R.D 87 (E.D. Tex. 1993).................................................................32

*Red Barns Motors, Inc. v. Cox Auto., Inc.*,
   No. 1:14-CV-1589, 2017 WL 11610289 (S.D. Ind. Aug. 11, 2017)............ 35, 36

*Regan v. City of Charleston*,
   No. 2:13-CV-3046-PMD, 2015 WL 6727079 (D.S.C. Nov. 3, 2015) ................51

*Rehberg v. Flowers Baking Co. of Jamestown, LLC*,
   No. 3:12-CV-596, 2015 WL 1346125 (W.D.N.C. Mar. 24, 2015) ....................51

*Reich v. S. New England Telecomms. Corp.*,
   121 F.3d 58 (2d Cir. 1997)......................................................................49

*Reynolds v. Wyndham Vacation Resorts, Inc.*,
   No. 4:14-CV-2261-PMD, 2015 WL 8042021 (D.S.C. Dec. 4, 2015)........... 22-23

*Schwarzschild v. Tse*,
   69 F.3d 293 (9th Cir. 1995)......................................................................33

*Scott v. Chipotle Mexican Grill, Inc.*,
   954 F.3d 502 (2d. Cir. 2020)........................................................ *passim*

*Stafford v. Bojangles' Rests., Inc.*,
   123 F.4th 671 (4th Cir. 2024) ........................................................ *passim*

*Steiner v. Mitchell*,
   350 U.S. 247 (1956)..............................................................................45

*Tennille v. Western Union Co.*,
   785 F.3d 422 (10th Cir. 2015) ............................................................. 32, 36

*Thiessen v. Gen. Elec. Corp.*,
   267 F.3d 1095 (10th Cir. 2001) ........................................................... 20, 23

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .................................................................. 49, 50

*Will v. Calvert Fire Ins. Co.*,
  437 U.S. 655 (1978) ....................................................................17

*Williams v. Matteson Sports Bar*,
  724 F. Supp. 3d 713 (N.D. Ill. 2024) ...........................................26

*Woe by Woe v. Cuomo*,
  729 F.2d 96 (2d Cir. 1984) ..........................................................28

*Zavala v. Wal Mart Stores, Inc.*,
  691 F.3d 527 (3d Cir. 2012) .........................................................19

*Zdanok v. Glidden Co.*,
  327 F.2d 944 (2d Cir. 1964) .........................................................19

**Statutes**

28 U.S.C. § 1291 .................................................................................1

28 U.S.C. § 1294 .................................................................................1

29 U.S.C. § 201 ...................................................................................1

29 U.S.C. § 216(b) ...................................................................... 21, 23

N.C. Gen. Stat. § 95-25.1 ...................................................................1

**Rules**

Fed. R. Civ. P. 23 ....................................................................... *passim*

Fed. R. Civ. P. 23(a)................................................................... *passim*

Fed. R. Civ. P. 23(b) ................................................................... *passim*

Fed. R. Civ. P. 23(b)(3).............................................................. 34, 39

Fed. R. Civ. P. 23(c)(1)(C) .............................................................18

Fed. R. Civ. P. 23(c)(2)(B) ......................................................... *passim*

## <u>STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION</u>

This is an appeal from a final judgment of the district court for the Middle District of North Carolina. The district court had subject matter jurisdiction over this collective and class action for unpaid statutorily required overtime wages pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.*, and for earned and accrued unpaid promised wages under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq*. This Court has jurisdiction of this appeal from the final judgment of the district court pursuant to 28 U.S.C. § 1291 and § 1294. Plaintiff-Appellant timely filed his notice of appeal of the final judgment of the district court.

## ISSUES PRESENTED FOR REVIEW

The primary issues and arguments raised in the instant appeal are as follows:

(1)    The district court erred in decertifying the Rounding Class by improperly conflating (or equating) the legal standard for decertifying an FLSA collective action with the more stringent standard of review for decertifying a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

(2)    The district court erred by prematurely decertifying the Automatic Deduction Class without allowing Named Plaintiffs to distribute notice pursuant to Federal Rule of Civil Procedure 23(c)(2)(B).

(3)    The district court erred in decertifying the Automatic Deduction Class by relying overwhelmingly on testimony from Rule 23 opt out individuals whose declarations should be given little to no weight.

(4)    The district court erred in decertifying Plaintiffs-Appellants' FLSA collective action by disregarding common evidence that Plaintiffs-Appellants were performing compensable work.

## STATEMENT OF THE CASE

### I.    RELEVANT PROCEDURAL HISTORY

Plaintiff-Appellant James Mebane sued GKN Driveline North America, Inc. ("Defendant-Appellee") on behalf of himself and all others similarly situated ("Plaintiffs-Appellants") in a collective action for violation of the FLSA and in a

2

representative action under the NCWHA pursuant to Fed. R. Civ. P. 23. JA2169.

Plaintiffs-Appellants' operative complaint includes allegations that Defendant-

Appellee maintained a corporate policy and practice of time-shaving and/or

rounding Plaintiffs-Appellants' hours worked and requiring work during scheduled

meal breaks. JA2169-2170.

On November 5, 2020, the district court conditionally certified Plaintiffs-

Appellants' FLSA collective action and certified the following putative Rule 23

class related to Defendant-Appellee's rounding policy, herein referred to as the

"Rounding Class":

> Individuals who were, are, or will be employed at Defendant GKN's
> North Carolina facilities on the manufacturing floor in non-managerial
> positions, were not compensated all promised, earned, and accrued
> wages due to Defendant's rounding policy, including, but not limited
> to, compensation for all hours worked up to forty (40) in a week and
> for hours worked above forty (40) in a week within two years prior to
> the commencement of this action, through the present.

JA381. On August 2, 2022, the court certified an additional Rule 23 class including

employees that worked during scheduled lunch breaks, herein referred to as the

"Automatic Deduction Class." JA2284. After certifying the Automatic Deduction

Class, the court ordered Plaintiffs-Appellants to submit a revised proposed notice,

JA2285-2286, which Plaintiffs-Appellants submitted on August 17, 2022. JA29. The

court did not rule on this proposed notice. Then, in response to Defendant-Appellee's

motion for reconsideration of the certification of the Automatic Deduction Class, the

3

district court allowed Plaintiffs-Appellants to submit supplemental briefing proposing a modified Automatic Deduction Class definition to address Defendant-Appellee's fail-safe arguments. JA2728. On November 21, 2022, Plaintiffs-Appellants proposed the following subclass:

> All Individuals who were, are, or will be employed at Defendant GKN's North Carolina facilities on the manufacturing floor in non-managerial positions, subjected to an automatic 30-minute meal break deduction, and who have or may have worked through or during unpaid meal breaks without compensation at least once at any time within two years prior to the commencement of this action, through the present.

JA2730-2731. Despite its previous certification of the Automatic Deduction Class, the district court never confirmed acceptance of the revised Automatic Deduction Class definition and notice of this second certified Rule 23 class was never distributed.

Defendant-Appellee then moved to decertify Plaintiffs-Appellants' FLSA collective action as well as the Rule 23 Rounding Class and Automatic Deduction Class. JA2290-2295. On May 12, 2023, the district court decertified the FLSA collective action as well as both the Rounding Class and the Automatic Deduction Class. JA2729-2746.

Upon the court's final judgment on Plaintiffs-Appellants' motion for attorney's fees, *see* JA2747, Plaintiff-Appellant timely appealed the district court's decertification of the FLSA collective action as well as the decertification of the Rule 23 Rounding Class and Automatic Deduction Class. JA2748-2751.

4

## II.    RELEVANT FACTS

Defendant-Appellee operates manufacturing facilities, including three divisions in North Carolina in Alamance, Roxboro, and Sanford. JA2211. Irrespective of location, Plaintiffs-Appellants undergo the same onboarding process and receive Defendant-Appellee's handbook, outlining compensation and timekeeping policies. JA139, JA141. Plaintiffs-Appellants work or worked for Defendant-Appellee as hourly, non-exempt machinists, line inspectors, and other similar positions. JA2211. Plaintiffs-Appellants were responsible for operating and/or repairing manufacturing workstations. JA279, JA288, JA295. Plaintiffs-Appellants were scheduled to work eight and one-half (8.5) or twelve (12) hour shifts, with a thirty (30) minute lunch break, but actual schedules depended on production needs. JA2221-2222.

### A. **Defendant-Appellee's Timekeeping Policy Mandates Plaintiffs-Appellants Record All Hours Worked and Its Compensation Policy Promises to Compensate Plaintiffs-Appellants for All Hours Worked.**

Defendant-Appellee's company policy promises to pay employees for all hours worked including for hours worked over 40 per week at time and a half. JA155-156. Defendant-Appellee also requires Plaintiffs-Appellants to accurately record hours worked, including requiring Plaintiffs-Appellants to punch in *before* engaging in pre-shift work and punch out after finishing post-shift activities. JA226; JA143-144 (corporate representative testifies that GKN's handbook requires

5

employees to accurately record hours worked); JA387 (Sanford facility policy requiring accurate recording of hours worked); JA395 (Sanford facility policy stating that "GKN pays employees for all hours worked"); JA400 (Alamance policy requiring accurate clock in and clock out so that GKN can "pay employees for all hours worked"); JA413 (Roxboro facility policy requiring accurate recording of hours worked); JA274 (acknowledging GKN policy required employees to properly record all hours worked).[1]

## B. **Plaintiffs-Appellants Complied with Policies and Clocked In/Out, Including for Required Pre- and Post-Shift Activities.**

Plaintiffs-Appellants followed Defendant-Appellee's policy to record all of their hours worked—both at the start and end of their shifts. JA274 (clocking in and going straight to the workstation); JA281-282 (same); JA289-290 (same); JA297-298 (same); JA1318-1319 (same); JA1146-1147 (clocking in and immediately going to help troubleshoot machines); JA2589-2590 (clocking in and immediately doing prep work).[2] Defendant-Appellee required Plaintiffs-Appellants to arrive before their shift began, clock-in, and go straight to work. JA144 (corporate representative

---

[1] *See also* JA281-282 (noting GKN policy requiring employees to accurately record all hours worked); JA289-290 (same); JA297-298 (same); JA583-584 (same); JA2584 (same); JA2590-2591 (same); JA2598 (same); JA2620 (same); JA2627-2628 (same).

[2] JA2597 (clocking in and performing essential job duties); JA2644 (same); JA2613-2614 (clocking in and going straight to the workstation); JA2584 (same); JA2620 (same); JA2627-2628 (same); JA2657-2658 (same); JA2664 (same).

6

testifies that the expectation is that employees clock in and immediately go to work). Plaintiffs-Appellants typically clocked-in three (3) to fifteen (15) minutes before their shift start time. JA272-273, JA288-289, JA296, JA2567, JA2613, JA2663.

### C. Plaintiffs-Appellants Were Required to Engage in Pre- and Post-Shift Activities Integral and Indispensable to Their Principal Activities.

After clocking in, Plaintiffs-Appellants engaged in required pre-shift duties, including, but not limited to, donning equipment, checking/setting machines, preparing tools, setting gauges, cleaning, and attending meetings. JA272 (describing pre-shift duties); JA280 (same); JA288 (same); JA296 (same); JA615-617 (sweeping, identifying bad machine parts) JA628-629 (checking gauges); JA925 (group meetings); JA1311-1313 (ensuring machines were running properly); JA1429 (working before start time to "get the line set up"); JA2589-2590 (attending meetings); JA2597-2598 (doing paperwork, checking machines and inventory); JA2606 (documentation); JA2619 (conducting "hand off" meeting from previous shift); JA2626 (same); JA2633-2634 (donning equipment); JA2649.

Similarly, Plaintiffs-Appellants completed required, post-shift activities, including cleaning, inputting data, and preparing workstations for the next shift. JA273 (cleaning, inputting production data); JA289 (cleaning, attending meetings); JA297; JA953 (working after scheduled shift time to clean up); JA1033-1034 (cleaning oil pads); JA1199-1200 (repairing machines); JA1617 (cleaning, doing

7

paperwork); JA2589-2590 (running inspections and reports); JA2598 (paperwork); JA2606 (same); JA2619 (cleaning, inputting information) JA2627 (same); JA2649-2650.[3] Failure to complete post-shift work slowed production and subjected Plaintiffs-Appellants to discipline and/or termination. JA1673-1674; JA 2634; JA2626-27 (failure to conduct pre-shift work would make employee "behind for the shift"); JA2619; JA2613 (failure to do pre or post shift work could lead to termination or being reported for insubordination); JA2573 (failure to conduct post-shift work could result in hours or days of delayed production); JA2568 (pre-shift work necessary to ensure products were not defective; defective parts could lead to warnings or termination).

**D. Despite Plaintiffs-Appellants Following Defendant-Appellee's Policy to Clock In/Out for Pre- and Post-Shift Activities, Defendant-Appellee's Rounding or Time-Shaving Policy Was Used to Avoid Compensating Plaintiffs-Appellants for All Hours Worked.**

To reduce the significant number of documented hours worked by Plaintiffs-Appellants, Defendant-Appellee implemented an informal rounding and/or time-shaving practice. *See* JA301-307. Specifically, Defendant-Appellee's rounding practice did *not* formally replace Defendant-Appellee's policy requiring all employees to accurately record their actual hours worked so that they would be

---

[3] *See also* JA2567-2568 (describing pre- and/or post-shift work); JA2572-2573 (same); JA2577-2578 (same); JA2583 (same); JA2613 (same); JA2663-2664 (same).

properly compensated for all such time. JA400 (Alamance policy requiring accurate clock in and clock out so that GKN can "pay employees for all hours worked"); JA387 (Sanford facility policy requiring accurate recording of hours worked); JA395 (Sanford facility policy stating that "GKN pays employees for all hours worked"); JA143-144 (corporate representative testifies that GKN handbook requires employees to accurately record hours worked). Indeed, rather than complying with its own policy of compensating employees for all hours worked, Defendant-Appellee's "rounding" practice shaves Plaintiffs-Appellants' hours worked by rounding down the hours worked to scheduled shift times, meaning Plaintiffs-Appellants were not compensated for *actual* hours worked, including the mandatory pre-and post-shift work described above. JA522-523 (describing rounding down hours worked to shift times).[4] While Defendant-Appellee suggests time is equally rounded up and down, Defendant-Appellee warned against Plaintiffs-Appellants clocking in early, where the rounding would benefit employees. JA396; JA402; JA624 (clocking in a certain number of minutes before shift led to write ups); JA2584 (clocking in early could lead to discipline); JA2651; JA2663.

---

[4] *See also* JA2652-2653 (noting that hours were rounded down and employees were not paid for pre-and post-shift work); JA2645-2646 (same); JA2641 (same); JA2636-2637 (same); JA2629-2630 (same); JA2622-2623 (same); JA2615-2616 (same); JA2609 (same); JA2601 (same); JA2593-2594 (same); JA2586 (same); JA2579-2580 (same); JA2575 (same); JA2570 (same).

Consequently, Defendant-Appellee's rounding and/or time-shaving policy automatically reduces Plaintiffs-Appellants' actual hours worked, compensating Plaintiffs-Appellants for *only* a portion of hours worked. JA1902-1907 (demonstrating GKN's use of "rounded" start and end times, regardless of the time recorded); JA207-210 (confirming that rather than using the readily available punch times that recorded actual time worked, GKN only used the rounded times with the automatic 30-minute lunch deduction for payroll purposes, irrespective of whether Plaintiffs-Appellants worked through lunch breaks); JA1615-1616 (describing GKN's practice of pushing time back to shift end times); JA2664 (paystubs did not reflect actual recorded hours worked, instead, only reflected shift times); JA2635 (not being paid for working past scheduled shift); JA522-523 (time was rounded to the shift time and employees were not paid for pre-shift work); JA584 (not receiving compensation for getting machines ready after clocking in before scheduled shift).[5] This finding was validated by *both* Plaintiffs-Appellants' and Defendant-Appellee's expert analyses. Both analyses found that the rounding practice is *not* neutral—it causes the majority of employees to experience a loss of time and wages. *Compare* JA1897-1899 *with* JA2676.

---

[5] *See also* JA2579-2580 (hours were rounded down only to scheduled shift times); JA2586 (same); JA2593-2594 (same); JA2601 (same); JA2609 (same); JA2615-2616 (same); JA2622 (same); JA2629-2630 (same); JA2636-2637 (same); JA2641 (same); JA2645-2646 (same); JA2652-2653 (same); JA2660 (same); JA2665.

E. **Plaintiffs-Appellants Regularly Worked Through Lunch Breaks and Lunch Breaks Were Automatically Deducted From Plaintiffs-Appellants' Pay.**

In addition to its rounding and/or time-shaving policy, Defendant-Appellee also maintained a policy of automatically deducting thirty (30) minute meal breaks from employees' pay. JA208-209. Defendant-Appellee maintained this deduction policy regardless of the fact that Plaintiffs-Appellants routinely worked during their unpaid meal break. Many Plaintiffs-Appellants ate at their workstations while working. JA291; JA523-525 (describing working through lunch because of "productivity scale"); JA592 (describing that the ability to take a meal break depended on how machines were running and employees typically either had to eat food on the floor or not take a break); JA722 (supervisors wanted employees to stay at the machines during lunch); JA1806-1809 ("[O]ut of working seven days, I want to say five of them, you know, we was eating meals in the cell"); JA1241-1242; JA1624 ("[T]he whole plant had to [work through lunch breaks]"); JA2664-2665 (taking no lunch break or having interruptions with work requests during lunch); JA2658-2659; JA2644-2645; JA2640-2641 (eating at desk while performing job duties); JA2635-2636; JA2608-2609 (common practice for employees to skip lunch); JA2593 (typically working through all or most of the lunch break); JA2585 (lunch break interrupted to help on-duty employees); JA2579 (same); JA2573-2574. Supervisors knew Plaintiffs-Appellants were not receiving a full thirty-minute meal

11

break and would call employees back to work from their lunch breaks. JA722-723; JA1760-1761; JA1466-1468; JA1809-1810; JA 1868 (supervisor missing meal periods); JA2644-2645 (supervisors called employees back to work to help with "pressing job tasks" during lunch break). Because Defendant-Appellee forbade employees from clocking out for the duration of their lunch breaks to accurately record the length of breaks taken, Defendant-Appellee did not provide Plaintiffs-Appellants with a mechanism to record time worked during meal breaks, leading to Plaintiffs-Appellants regularly working through their lunch break, and such time being deducted from their pay. JA2569 (lunch breaks automatically deducted whether or not employee took it); JA2573-2574 (same); JA2578-2579 (same); JA2584-2586 (same); JA2607-2609 (same); JA2621-2623 (same); JA2644-2646 (same); JA2658-2660 (same); JA2592-2593 (supervisor told employee not to clock out despite employee working through lunch break).

## SUMMARY OF ARGUMENT

In its order decertifying Plaintiffs-Appellants' class and collective action, the district court erred in four respects. First, the district court decertified the Rounding Class without conducting *any analysis* pursuant to Rule 23 (a) and (b). Instead, the district court wrongfully equated the legal standard for decertifying a collective action under the FLSA with the legal standard for decertifying a Rule 23 class action, using the FLSA standard to decertify the Rule 23 Rounding Class. *See* JA2740.

12

Equating the two standards is at odds with circuit courts around the country and district courts within the Fourth Circuit that refuse to equate the two standards. This error is especially problematic given that the district court *previously certified* the Rounding Class after conducting a *rigorous* Rule 23 certification analysis. JA376-381. Defendant-Appellee has an onerous burden when challenging an already certified class—a burden Defendant-Appellee failed to meet in this case. Failure to use the proper Rule 23 decertification standard before decertifying the Rounding Class without a well-reasoned analysis constitutes an abuse of discretion.

Second, the district court erred by failing to allow Named Plaintiffs-Appellants to distribute Notice of the Automatic Deduction Class despite certifying the class. *See* Fed. R. Civ. P. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3) . . . the court *must* direct to class members the best notice that is practicable under the circumstances. . ." (emphasis added)). Plaintiffs-Appellants filed an appropriate proposed notice in line with the court's certification order, yet the court never approved the notice. *See* JA2730-2731. Instead, the court delayed class notification for several months and ultimately decertified the Automatic Deduction Class. JA2740-2746.

Third, the district court decertified Plaintiffs-Appellants' Automatic Deduction Class by relying on "happy camper" declarations from current employees at GKN who chose to opt out of the Rule 23 class, thereby forgoing any stake in the

13

outcome. JA2743. Despite previously certifying the Automatic Deduction Class, the court later decertified the class, citing almost exclusively to declarations about lunch breaks from current GKN employees who specifically chose to opt out of the action. JA2743. Instead of giving such opt out and "happy camper" declarations little to no weight, the court used them as a basis to decertify the class. JA2740-2746. Indeed, the district court failed to consider *significant* representative testimony from actual class members who testified about working through their lunch breaks and not being paid for that time. JA2740-2746.[6] Ignoring this evidence and instead relying on "happy camper" declarations or opt out individuals who were no longer part of the certified class also constitutes an abuse of discretion.

Lastly, the district court erred by decertifying the FLSA collective action. JA2731-2739. The district court found that Plaintiffs-Appellants performed different types of pre- and post-shift compensable work, making individualized inquiries necessary to determine liability. JA2735-2736. In other words, despite the district court's finding that various types of pre- and post-shift activities were indeed compensable, the district court erroneously held that distinction in work

---

[6] *See also* JA291; JA592; JA722 (supervisors wanted employees to stay at the machines during lunch); JA1372-1374; JA1806-1809; JA1241-1242; JA1624 ("[T]he whole plant had to [work through lunch breaks]"); JA2664-2666; JA2658-2659; JA2645; JA2640-2641 (eating at desk while performing job duties); JA2635-2636; JA2608-2609 (common practice for employees to skip lunch); JA2593 (typically working through all or most of the lunch break); JA2585 (same); JA2579 (same); JA2573-2574 (same).

performed—despite compensability—raised individualized inquiries warranting decertification. JA2735-2736. However, the district court's finding ignores one key issue: there is *common evidence* of compensable pre- and post-shift work being performed.[7] Moreover, the district court found that the *time* spent conducting pre- and post-shift work varied among Plaintiffs-Appellants, again necessitating individualized fact-finding. JA2737. However, the length of compensable work performed relates to the amount of damages for each class member and is not a valid basis for decertifying a collective action. Given the overwhelming common evidence of compensable work activities, the district court abused its discretion by decertifying the FLSA collective based on a misapprehension despite Supreme Court and Fourth Circuit guidance obviating the need for fact-intensive individualized inquiries.

---

[7] *See* JA280 (describing pre-shift duties); JA1134-1136 (working on machinery before the start of the shift); JA615-617 (identifying bad machine parts pre shift); JA628 (checking gauges was "pre-work"); JA925 (having group meetings before the start of the shift); JA1312 (ensuring machines were running); JA2589-2590 (attending meetings); JA2597-2598 (doing paperwork, checking machines and inventory); JA2606 (documentation); JA2619 (conducting "hand off" meeting from previous shift); JA2626; JA2633 (donning equipment); JA1440-1441 (getting gloves on and getting machine started); JA1033-1034 (cleaning oil pads); JA1199-1200 (staying late to repair machines); JA1617 (describing post-shift duties such as cleaning and doing paperwork); JA1734 (cleaning, taking off protective equipment); JA2589-2590 (running inspections and reports); JA2598 (post-shift paperwork); JA2606 (post-shift paperwork); JA2619 (cleaning, inputting information); JA2627 (post-shift cleaning); JA2649-2650 (completing inspections, submitting reports).

15

## ARGUMENT

### I.    STANDARD OF REVIEW

#### A. Standard of Review Upon a Defendant's Motion to Decertify a Rule 23 Class

This Court reviews a district court's decision related to Rule 23 class certification under an abuse-of-discretion standard. *Stafford v. Bojangles' Rests., Inc.*, 123 F.4th 671, 678 (4th Cir. 2024); *Brown v. Nucor Corp.*, 785 F.3d 895, 901–902 (4th Cir. 2015) (reviewing district court's decision to decertify a class action for abuse of discretion); *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 757 (4th Cir. 1998) (same), *vacated and remanded on other grounds by Lowery v. Circuit City Stores, Inc.*, 527 U.S. 1031 (1999); *Amara v. CIGNA Corp.*, 775 F.3d 510, 519–20 (2d. Cir. 2014); *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 549 (7th Cir. 2016). "A district court abuses its discretion when it materially misapplies the requirements of Rule 23." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). "Such misapplications include clear errors in the district court's factual findings or legal errors." *Stafford*, 123 F.4th at 678.

##### i.    This Court Has *Not* Yet Ruled on the Appropriate Decertification Standard to be Applied by District Courts in the Fourth Circuit for Rule 23 (a) and (b) *Certified* Classes.

While this Court has never explicitly ruled on the appropriate legal standard in connection with a motion to decertify a Rule 23 class, this Court and sister circuits have suggested that the same standard used when ruling on a motion for Rule 23

16

class certification (i.e., whether the requirements of Rule 23 (a) and (b) are met) should be applied when ruling on a motion to decertify. *See Brown*, 785 F.3d at 902 (examining whether the district court appropriately applied Rule 23 in its decertification order); *see Amara*, 775 F.3d at 522 (reviewing motion for decertification pursuant to Rule 23 (a) and (b)); *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 830–33 (8th Cir. 2016) (same).

Specifically, to achieve certification as a class, plaintiffs must meet Rule 23(a)'s requirements of numerosity, commonality, typicality, and fair and adequate representation. Fed. R. Civ. P. 23(a). If the prerequisites under Rule 23 (a) are met, the action must then satisfy one of the three alternative sets of requirements under Rule 23 (b). Fed. R. Civ. P. 23(b). Thus, a plaintiff bears the initial burden of showing that the class should be certified under Rule 23. *See Krakauer v. Dish Network, LLC*, 925 F.3d 643, 654 (4th Cir. 2019).

### ii. Defendant-Appellee Bears the Burden of Showing Decertification of a Previously *Certified* Rule 23 Class is Warranted.

As it relates to a motion to decertify, "[g]enerally, the proponent of a motion bears the initial burden of showing that the motion should be granted." *Day*, 827 F.3d at 832; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (party moving for summary judgment bears burden of demonstrating basis for motion); *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662 (1978) (party moving for issuance

17

of writ of mandamus has burden to show its right to such issuance); *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1143 (S.D. Cal. 2007) ("The burden is on the party seeking decertification to demonstrate the elements of Rule 23 have *not* been established.") (emphasis added), *aff'd*, 660 F.3d 1055 (9th Cir. 2011). Additionally, the district court has "an independent duty to assure that a class continues to be certifiable under Rule 23(a)." *Day*, 827 F.3d at 832; *see* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended *before* final judgment.") (emphasis added); *Gen. Tel. Co. of Sw. v Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999).

This independent obligation of the district court "lends further support for requiring the movant to bear the burden of showing that the district court mistakenly maintained class certification." *Day*, 827 F.3d at 832. Indeed, a defendant bears a "more onerous burden in challenging certification where, as here, the initial certification decision was carefully considered and made *after* certification-related discovery." *Id.* (emphasis added); *see also Mazzei v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016) ("A district court decision granting certification is given greater deference than a decision denying certification (or, a fortiori, an order decertifying a class)."); *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers &*

18

*Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("**[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason *permitted*, to battle for it again**." (emphasis added) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964))).

## B. <u>Standard of Review Applied in Decertifying an FLSA Collective Action</u>

While this Court has not ruled on the appropriate standard of review applied to a district court's decertification of a conditionally certified collective action under the FLSA, other circuits use an abuse-of-discretion standard of review, mirroring the standard applied to review certification or decertification of Rule 23 class actions. *See Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d. Cir. 2020); *Morgan v. Family Dollar Stores*, *Inc.*, 551 F.3d 1233, 1262 (11th Cir. 2008) (reviewing denial of defense motion for collective action decertification for abuse of discretion); *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 534–35 (3d Cir. 2012) (finding abuse of discretion if district court's decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact" (internal quotations omitted)).

### i. <u>Most Circuits Endorse a Two-Step Approach in FLSA Collective Actions.</u>

This Court has not yet ruled on how to determine if Named Plaintiffs are "similarly situated" for the purpose of proceeding as a collective under the FLSA.

19

However, most circuits around the country endorse a two-step approach. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018) ("The two-step approach has been endorsed by [nearly] every circuit that has considered it."); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *Morgan*, 551 F.3d at 1260–61. The first stage, conditional certification, requires only a preliminary determination of whether plaintiffs are similarly situated to permit notice to potential collective members. *Myers*, 624 F.3d at 555; *Morgan*, 551 F.3d at 1260–61; *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 172 (1989) (recognizing the importance of distribution of notice to potential participants in the collective). At stage two, after discovery is largely complete, circuit courts consider three factors to determine if the collective fulfills the similarly situated standard: (1) the factual and employment settings of individual plaintiffs; (2) whether defendants have presented individualized defenses; and (3) fairness and procedural considerations. *See Morgan*, 551 F.3d at 1261 (citing *Thiessen v. Gen. Elec. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)); *Halle v. West Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 226 (3d Cir. 2016).

20

## II. THE DISTRICT COURT ERRED IN DECERTIFYING PLAINTIFFS-APPELLANTS' ROUNDING CLASS BY IMPROPERLY EQUATING THE STANDARD FOR DECERTIFYING A COLLECTIVE ACTION UNDER THE FLSA WITH THE STANDARD FOR DECERTIFYING A CLASS ACTION PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

"Rule 23 actions are *fundamentally* different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) (emphasis added). As such, the legal standard for decertifying a collective action pursuant to 29 U.S.C. § 216(b) and the legal standard for decertifying a Rule 23 class action differ. *Compare Brown*, 785 F.3d at 902 (applying Rule 23 to the question of whether class decertification was appropriate) *with Morgan*, 551 F.3d at 1261 (decertification of a collective action requires assessing factual and employment settings, individualized defenses, and fairness and procedural concerns); *see also Stafford*, 123 F.4th at 678 n.1 (standards governing collective actions under the FLSA are different than standards governing Rule 23 claims). However, the district court incorrectly equated the collective action standard with the Rule 23 standard, providing no analysis of Rule 23 (a) or (b) before decertifying the Rounding Class. JA2740; *see Monroe v. FTS USA, LLC*, 860 F.3d 389, 405–406 (6th Cir. 2017) ("[W]e have refused to equate the FLSA certification standard for collective actions to the more stringent certification standard for class actions under Rule 23."). This is especially troubling given that the district court *previously certified* the Rounding

21

Class *after* applying the rigorous Rule 23 standard for class certification. JA381; *Day*, 827 F.3d at 832 (the burden is "onerous" when challenging class certification after the Rule 23 class was already certified based on careful consideration); *Mazzei*, 829 F.3d at 270 (certification decision is given greater deference than an order decertifying a class). There were no significant intervening events between the court's initial certification of the Rounding Class and its subsequent decertification, and thus, the court should have applied the Rule 23 standard and denied Defendant's motion to decertify. The district court's failure to do so was legal error and requires remand.

### A. The Decertification Standard for an FLSA Collective Action is Separate and Distinct from the Rule 23 Class Decertification Standard.

Most circuits considering the relationship between the decertification standards for an FLSA collective action and a Rule 23 class action have determined that the standards are distinct. *See Chipotle*, 954 F.3d at 518–519; *Monroe*, 860 F.3d at 405; *Campbell,* 903 F.3d at 1111–1113; *Calderone v. Scott*, 838 F.3d 1101, 1103–04 (11th Cir. 2016); *In re Citizens Bank*, *N.A.*, 15 F.4th 607, 614 (3d Cir. 2021) (both Rule 23 and FLSA collective actions are governed by their "own legal standard[s]"). While this Court has not yet ruled on the issue, courts within the Fourth Circuit have followed the circuits cited above and refused to equate the standards. *See Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 312–13 (D. Md. 2014); *Reynolds v.*

*Wyndham Vacation Resorts, Inc.*, No. 4:14-CV-2261-PMD, 2015 WL 8042021, at *5 (D.S.C. Dec. 4, 2015); *Clark v. Williamson*, No. 1:16-CV-1413, 2018 WL 1626305, at *3 n.4 (M.D.N.C. Mar. 30, 2018) (FLSA certification is not subject to Rule 23's numerosity requirement).

The rationale behind distinguishing between the two standards is soundly based on the language and structure of the separate causes of action. First, Congressional intent was to keep the actions distinct—by crafting the "similarly situated" requirement of § 216(b), Congress chose not to have the Rule 23 standards apply to FLSA collective actions. 29 U.S.C. § 216(b); *see Thiessen*, 267 F.3d at 1105; *Chipotle*, 954 F.3d at 519. Moreover, the requirements for certification or decertification of a Rule 23 class action are significantly more rigorous than for decertification of a collective action under the FLSA. *See Campbell*, 903 F.3d at 1112 (recognizing that the "limited statutory requirements of a collective action" impose a "lesser burden" than the numerous requirements of Rule 23). Allowing district courts to equate the two standards will lead to dangerous outcomes for plaintiffs attempting to pursue collective actions under the FLSA because conflation will allow courts to require those proceeding as a collective to meet the higher burden of Rule 23 when attempting to prove they are similarly situated. *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584–85 (6th Cir. 2009) (applying Rule 23 analysis to the question of whether plaintiffs are similarly situated holds plaintiffs

23

to a "more stringent standard than is statutorily required"). Such an outcome would be contrary to the language of the FLSA as well as Congressional intent to create a distinct collective mechanism to "vindicate[] federal labor rights." *See Chipotle*, 954 F.3d at 519. Moreover, equating the standards will allow, as here, courts to sidestep the more rigorous Rule 23 analysis, effectively eliminating the impact of the rule altogether. Indeed, as here, Plaintiffs-Appellants had *already* met the rigorous requirements of Rule 23 (a) and (b) when the Rounding Class was certified. JA376-381. To decertify the Rounding Class based only on the less rigorous FLSA collective action standard negates the high bar that Plaintiffs-Appellants *had already met* and reduces the importance of the prerequisites outlined in Rule 23 (a) and (b). *See Campbell*, 903 F.3d at 1112. Moreover, as addressed below, it allows Defendant-Appellee to ignore its onerous burden to prove decertification is warranted based on a failure to meet the Rule 23 (a) and (b) requirements. *See Day*, 827 F.3d at 832.

Based on the foregoing, Plaintiffs-Appellants respectfully ask this Court to hold that the standard for decertifying a collective action is distinct from the standard for decertifying a Rule 23 class action warranting reversal and remand for further proceedings.

24

**B. The District Court Improperly Applied the Standard for FLSA Collective Action Decertification to Decertify the Rule 23 Rounding Class.**

Instead of using separate and distinct standards to analyze the FLSA collective action and the Rule 23 class action, the district court decertified the Rule 23 Rounding Class on the basis that it did not meet the requirements of the standard for FLSA collective action certification. JA2740. Notably, the district court's *only* analysis when decertifying the Rounding Class was as follows:

> While the Rule 23 and FLSA collective action certification standards vary to some extent, "the case law has largely merged the standards, though with some terminological differences." *Espenscheid v. DirectSat USA, LLC,* 705 F.3d 770, 772 (7th Cir. 2013). Accordingly, the Court finds that Plaintiffs' Rule 23 Rounding Class must be decertified for the same reasons outlined in its discussion of the collective action above.

JA2740.

Plaintiffs-Appellants take issue with several aspects of this analysis. First, it improperly merges the Rule 23 class and FLSA collective action decertification standards. JA2740; *see Monroe*, 860 F.3d at 405. Second, nowhere in its cursory analysis decertifying the Rounding Class does the district court acknowledge that it had previously engaged in a rigorous analysis of Plaintiffs-Appellants' motion for Rule 23 class certification, resulting in class certification. *See* JA376-381. This certification occurred after discovery and after Defendant had a full opportunity to challenge certification. *See, e.g.,* JA46-351 (various evidence submitted with Plaintiffs-Appellants' amended motion for Rule 23 class certification); JA16 (Defendant-Appellee's response in opposition to Rule 23 class certification). Thus,

25

the district court completely ignored the fact that Plaintiffs-Appellants had already met the very high burden for Rule 23 class certification. JA2740. Instead, without offering any rationale regarding which Rule 23 requirements Plaintiffs-Appellants no longer met in connection with Defendant-Appellee's motion for decertification, the district court simply decertified the Rule 23 class by merging the two legal standards.[8] Third, it relies on an outlier case, *Espenscheid*, as most circuits discussing this issue *refuse* to merge the FLSA and Rule 23 decertification standards. *See Campbell*, 903 F.3d at 1111–1113 (articulating the differences between FLSA actions and Rule 23 actions and finding they "bear little resemblance to one another"); *Chipotle*, 954 F.3d at 519 (same); *Monroe*, 860 F.3d at 405 (same); *Calderone*, 838 F.3d at 1103–04 (same). Lastly, courts within the Seventh Circuit have interpreted *Espenscheid* as specific *only* to the context of that case and rejected applying it for the proposition that the Rule 23 and FLSA collective action decertification standards are the same. *See Williams v. Matteson Sports Bar*, 724 F. Supp. 3d 713, 720 (N.D. Ill. 2024) (noting that even courts within the Seventh Circuit are "divided" about how to apply *Espenscheid*). Indeed, the district court offered no explanation of how *Espenscheid* was analogous before broadly applying it to

---

[8] Without any understanding of which elements of Rule 23 (a) and (b) the district court took issue with, it is also unclear whether the district court could have addressed any class challenges by creating subclasses or refining the class definition. *See Stafford*, 123 F.4th at 682–83 (offering the solution of refining class definitions or creating subclasses as a tool for the district court instead of decertification).

Plaintiffs-Appellants' case. JA2740. Nor did the district court offer any explanation for why it was conflating the FLSA and the Rule 23 standard. JA2740; *see Fischer v. Fed. Express Corp.*, 42 F.4th 366, 380 (3rd Cir. 2022) ("[c]ourts 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.'" (quoting *Fed. Express Corp. v. Holowecki,* 552 U.S. 389, 393 (2008))). Accordingly, the district court abused its discretion by equating the FLSA collective action decertification standard with the Rule 23 class action decertification standard to decertify the Rounding Class.

### C. The District Court Previously Certified the Rounding Class Using the Proper Rule 23 Standard and Defendant-Appellee Failed to Meet the Onerous Burden Required to Challenge Certification.

The errors identified above related to the district court's conflation of the FLSA collective action decertification standard and the Rule 23 decertification standard are especially problematic given the district court's previous certification of the Rounding Class. JA381. "It is the district court's responsibility in the first instance to determine whether plaintiffs have met their burden to present a case properly amenable to class treatment." *Stafford*, 123 F.4th at 683. Once certified, "a court should not 'disturb its prior certification findings **absent some significant intervening event, or a showing of compelling reasons to reexamine the question**.'" *See Brooks v. GAF Materials Corp.*, 301 F.R.D. 229, 230 (D.S.C. 2014) (quoting *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011));

27

*Woe by Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984) (**holding that, once certified, it is "an extreme step" to decertify a class, since the class "can always be modified or subdivided as issues are refined"**); *see also Day*, 827 F.3d at 832 (defendant must provide a "good reason" for the district court to revisit certification of an already certified class). Indeed, when ruling on a motion to decertify a Rule 23 class that has already been certified, the district court has a duty to assess the changes that have occurred since the certification order. *See Day*, 827 F.3d at 832 (finding the district court properly considered the reasons for revisiting certification offered by the defendant); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 948 (9th Cir. 2011) (district court did not abuse its discretion when ruling on a motion for decertification of a certified class when the court "first noted changes that had occurred since its certification order").

In its November 5, 2020, order, the district court conducted a thorough analysis of Rule 23 (a) and (b) for the Rounding Class, finding that the class met the high bar to proceed as a class action. JA376-381.  The certification order followed extensive certification-related discovery by the parties.  *See, e.g.,* JA46-269 (Rule 30(b)(6) deposition of corporate designees); JA270-300 (declarations from employees); JA301-307; JA 351-355 (corporate policies); JA308-350 (payroll data and earnings statements). Between the November 5, 2020, certification and the May 12, 2023, decertification, there were no significant intervening events or any other

28

compelling reasons to reexamine the question of certification. In fact, when moving for decertification, Defendant-Appellee merely repeated arguments made *before* the November 5, 2020, certification. In both its initial opposition to class certification and its eventual motion for class decertification, Defendant-Appellee argued that factualized inquiries into work-related duties would predominate over collective and class claims. JA16, JA30-31.

> **i.  As in *Day*, the Burden on Defendant-Appellee to Challenge Certification is "Onerous," Especially When Certification Was Already Granted After Certification-Related Discovery.**

In *Day*, the Eighth Circuit affirmed the district court's denial of a motion to decertify a Rule 23 class, in part, because the district court properly reviewed defendant's reasons for revisiting the certification issue and "found them wanting." *Id.* In this case, Defendant-Appellee failed to offer *any* reasons for revisiting the certification order. *See* JA30-31. Moreover, in its analysis, the district court made *no attempt* to describe what changes had occurred since its initial decision to certify Plaintiffs-Appellants' Rule 23 class claims. JA2740. Nor does the district court analyze whether any such changes are significant enough to show that it "mistakenly maintained class certification" when it initially certified the class. *See Day*, 827 F.3d at 832. Accordingly, Defendant-Appellee failed to meet its heavy burden to challenge certification, given that the district court had previously certified the

29

Rounding Class after engaging in a rigorous Rule 23 analysis based on certification-related discovery. *See* JA30-31; JA376-381.

### ii. <u>The District Court Did *Not* Hold Defendant-Appellee to its Burden to Prove The Requirements of Rule 23(a) and (b) Were Not Met by the Rounding Class.</u>

Defendant-Appellee made no substantive arguments regarding the distinction between the standard to decertify Plaintiffs-Appellants' Rule 23 classes and FLSA collective; furthermore, any argument related to decertifying the Rounding Class was merged with Defendant-Appellee's argument to decertify the collective. *See* JA30-31. Despite Defendant-Appellee's inadequate arguments, the district court did not review its previously certified Rounding Class to ensure it *still* satisfied the Rule 23 (a) and (b) pre-requisites, nor did the court discuss whether anything had changed since certification. Instead, the court decertified the class based on the irrelevant requirements of section 216(b). *See Campbell*, 903 F.3d at 1112. The district court abused its discretion by failing to hold Defendant-Appellee to this burden, and further, by failing to assess whether any valid reasons were presented for revisiting the certification decision. Such failures were erroneous and require reversal and remand.

**III. THE DISTRICT COURT ERRED BY PREMATURELY DECERTIFYING THE AUTOMATIC DEDUCTION CLASS WITHOUT ALLOWING NAMED PLAINTIFFS TO DISTRIBUTE NOTICE PURSUANT TO RULE 23(C)(2)(B).**

The Federal Rules of Civil Procedure require that once a class is certified pursuant to Rule 23(b), the court "must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23 (c)(2)(B). However, after certifying the Automatic Deduction Class pursuant to Rule 23 (b), the district court did not allow Named Plaintiffs to distribute notice and, instead, delayed notice until its ultimate decision to decertify the class.

## A. District Courts Should Not Delay Notice of Class Certification.

Notice to class members "is not a *discretionary* consideration" but rather "an unambiguous requirement of Rule 23." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) (emphasis added); *Brown v. Colegio de Abogados de Puerto Rico*, 613 F.3d 44, 51 (1st Cir. 2010) (notice is "clearly mandatory" under Rule 23(c)(2)(B)). While the Federal Rules of Civil Procedure do not specify when notice must be sent, the general rule from several circuits is that notice should be sent "promptly" after class certification. *In Re Franklin Nat. Bank Secs. Litig.*, 574 F.2d 662, 670 n.6 (2d Cir. 1978); *Colegio de Abogados de Puerto Rico*, 613 F.3d at 51 (district court must provide notice promptly); *see also Pennington v. Fluor Corp.*, Nos. 0:17-CV-2094, 0:17-CV-2201, 2019 WL 2537674, at *5 (D.S.C. June 20, 2019); *see also McKinney v. U.S.P.S.*, 292 F.R.D. 62, 68 (D.D.C. 2013). Delaying notice of class certification

31

"raises due process concerns." *Chaney v. Vermont Bread Co.,* No. 2:21-CV-120, 2022 WL 3443973, at *7 (D. Vt. Aug. 17, 2022); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) ("The legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are . . . substantially similar.").

To determine whether to delay notification, courts should "balance and consider whether a party will be harmed by the issuance of notice and whether the class will be harmed from a delay in notice." *Pennington*, 2019 WL 2537674, at *5. This balancing test stems from ensuring class members receive adequate due process. *See Tennille v. Western Union Co.*, 785 F.3d 422, 438 (10th Cir. 2015) ("Rule 23's notice requirements are designed to satisfy due process by providing unnamed class members the right to notice of certification . . ."). While the district court has discretion to determine the "mechanics of the notice process," the court is subject to a "reasonableness standard[] imposed by due process." *Grunin v. Intl. House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975). Indeed, in many cases, district courts will *decline* to wait for the resolution of anticipated motions—*including motions for class decertification*—to send out class notice. *See R&D Bus. Sys. v. Xerox Corp.*, 150 F.R.D 87, 92 (E.D. Tex. 1993) (finding it would be "unacceptable delay" to wait until resolution of a motion for decertification to send class notice);

32

*Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) (notice should be sent "well before" the merits of the case are decided).

**B. <u>Despite Certifying the Automatic Deduction Class Pursuant to Rule 23 (b), the District Court Delayed Notice of Class Certification.</u>**

On August 2, 2022, the court certified the Automatic Deduction Class and ordered Plaintiffs-Appellants to submit a revised proposed notice, which Plaintiffs-Appellants did. JA29, JA2284-2286. The court did not rule on this proposed notice and notice was not distributed. Later, in response to Defendant-Appellee's motion for reconsideration of the certification of the Automatic Deduction Class, the district court directed Plaintiffs-Appellants to submit a modified Automatic Deduction Class definition. JA2728. Plaintiffs-Appellants again complied with the court's order and proposed an updated class definition on November 21, 2022. JA32. The court never ruled on this revised definition and notice of the class was never distributed. The next ruling by the district court related to the Automatic Deduction Class was the decertification of the class on May 12, 2023, months after Plaintiffs-Appellants offered an updated proposed class definition for the already certified class. JA2740-2746.

Indeed, the district court's failure to send notice of class certification was an abuse of discretion in violation of Rule 23 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 23 (c)(2)(B); *In Re Franklin*, 574 F.2d at 670 n.6 (Rule 23 requires

33

class notice follow promptly after certification). The district court certified the Automatic Deduction Class pursuant to Rule 23(b)(3), and thus, should have "direct[ed] to class members the best notice that [was] practicable." Fed. R. Civ. P. 23 (c)(2)(B). Instead, despite having a proposed definition before it, the district court did not act on the revised proposed sub-class definition until it decertified the class. *See* JA2728 (ordering Plaintiffs-Appellants to modify Automatic Deduction Class), JA2730 (identifying proposed redefinition of Automatic Deduction Class provided by Plaintiffs-Appellants), JA2740-2746 (decertifying Automatic Deduction Class). As such, a definition of the certified Automatic Deduction class was never sent.

### i. **Plaintiffs-Appellants Were Harmed by the Court's Failure to Send Class Notice.**

Despite delaying notice, the district court did not consider whether any party or the class would be harmed by such a delay. *See Pennington*, 2019 WL 2537674, at *5 (outlining the court's duty when considering whether to delay notice); *Grunin*, 513 F.2d at 121 (district court's decisions related to class notice must be reasonable). Plaintiffs-Appellants and the putative class faced significant harm from the failure to send class notice. In *Pennington*, the court found that delay of notice was harmful to the class where the class had already been certified and the action had been pending before the court for two years. *See Pennington*, 2019 WL 2537674, at *6. The facts here are even more extreme than in *Pennington*. As in *Pennington*, the district court here certified the Automatic Deduction Class. JA2284. It has been

34

almost four (4) years since the district court certified the Automatic Deduction Class, and almost eight (8) years since the filing of the original complaint. JA6 (initial complaint filed in October 2018); JA28 (order certifying Automatic Deduction Class filed August 2, 2022). Here, the case began in 2018, and the proposed notice and updated class definition were submitted to the court in 2022. *See* JA6; JA32 (submission of proposed redefinition of Automatic Deduction Class provided by Plaintiffs-Appellants). The collective/class action could have been tried in **May 2023**, but instead, the litigation continues. Thus, the harm to Plaintiffs-Appellants and the class is even more significant than it was in *Pennington*, where the court found the harm too great to delay notice. *See Pennington*, 2019 WL 2537674, at *6.

### ii. <u>Defendant-Appellee Would Not Have Been Harmed by the Sending of Class Notice.</u>

Defendant-Appellee would not have faced any harm from the sending of the notice. First, Plaintiffs-Appellants would have absorbed the costs of notifying class members. *See Eisen,* 417 U.S. at 177. Additionally, judicial efficiency would have been served by sending notice. *See Beale v. EdgeMark Fin.*, No.  *Corp.*, No. 94-CV-1890, 1995 WL 631840, at *5 (N.D. Ill. Oct. 23, 1995) (finding that "the interests of fairness and judicial efficiency do not support a deferral of notice to the already certified class"); *See Red Barns Motors, Inc. v. Cox Auto., Inc.*, No. 1:14-CV-1589, 2017 WL 11610289, at *2 (S.D. Ind. Aug. 11, 2017) (finding that delaying class notification after certification puts the case on "an indefinite hold"). Finally, any

35

concerns about possible changes in class definition given the court's request for an updated class definition could have been assuaged by sending additional notice regarding definition changes. *See Red Barns Motors*, 2017 WL 11610289, at \*1 (finding that if "the class definition is changed in any way" the court could "determine the timing of any additional notice").

### iii. The District Court Failed to Balance the Harms of Delaying Notice and Offered No Reasoning for its Delay in Sending Class Notice.

Most significant, however, for the purpose of this appeal, is the district court's *failure to offer any reasoning for the delay in sending notice. See* JA2729-2746 (decertification order offers no explanation for why Plaintiffs-Appellants' proposed definition was never ruled on nor why notice of the Automatic Deduction Class was never sent). The court had a duty under Rule 23(c)(2)(B) to direct notice to class members, or, at the very least, balance the possible due process harms of delaying notice. *See Tennille,* 785 F.3d at 438; *Grunin*, 513 F.2d at 121 (district court's notice decisions must satisfy reasonableness standard of due process); *Pennington*, 2019 WL 2537674, at \*5. Here, the court did neither. The district court did not promptly send notice after class certification, *see In Re Franklin*, 574 F.2d at 670 n.6, and the district court did not explain the due process implications of delaying notice, *see Grunin,* 513 F.2d at 121.

36

The district court's failure to act prejudiced Plaintiffs-Appellants because they had no opportunity to notify putative class members about a class that had already been certified. *See* JA2284; *Eisen*, 417 U.S. at 174 (notice and opportunity to be heard are fundamental guarantees of due process). Furthermore, in the months of delay after Plaintiffs-Appellants submitted a revised class definition in November 2022, the district court did not ask Plaintiffs-Appellants to update the class definition or give any indication that the proposed definition was not appropriate.[9] *See* JA32-41 (docket history following submission of redefinition). In other words, Plaintiffs-Appellants had no chance to refine the definition because the court never ruled on the definition. These failures were an abuse of discretion by the district court as they left Plaintiffs-Appellants without the ability to act on behalf of the certified Automatic Deduction Class. As such, Plaintiffs-Appellants request this Court reverse and remand the decertification decision for further proceedings.

---

[9] If the court took issue with the proposed notice—possibly related to the fail-safe concerns raised in the court's order on Defendant-Appellee's motion for reconsideration—it had options, including refining the class definition. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (**noting that "the fail-safe problem . . . can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis**"); *see also Stafford,* 123 F.4th at 683 (district court has discretion to refine class definition or create subclasses instead of decertifying the class). However, the district court took no initiative to make refinements to the class definition and gave Plaintiffs-Appellants no opportunity for refinement. Instead, it simply decertified the Automatic Deduction Class on grounds unrelated to the fail-safe concerns. *See* JA2740-2746.

37

IV.  **THE DISTRICT COURT ERRED IN DECERTIFYING THE AUTOMATIC DEDUCTION CLASS BY RELYING OVERWHELMINGLY ON DECLARATIONS FROM OPT OUT INDIVIDUALS WHOSE DECLARATIONS SHOULD BE GIVEN LITTLE TO NO WEIGHT.**

The district court's decision to decertify the Automatic Deduction Class rested on the grounds that individualized inquiries would be necessary to prove liability and time spent working during lunch. However, these findings directly contradict the district court's own findings in previous orders. JA2725 ("[T]he court does not find it would have to engage in difficult individual inquiries to ascertain the Automatic Deduction Class."). To support this change in opinion, the court primarily cites declarations filed by Defendant-Appellee alongside its motion for decertification. JA2743. Many of the declarations cited are "happy camper" declarations from individuals who were current employees who had opted out of the lawsuit. JA2743. Plaintiffs-Appellants contend it was error for the district court to rely so heavily on opt-out and "happy camper" declarations to support decertification of the Automatic Deduction Class, especially given the previous findings of the district court related to the class.

### A.  Reliance on "Opt Out" Declarations is Disfavored.

Declarations from individuals who have opted out of a Rule 23 class should not be given any weight in a certification decision because they are no longer in the action and therefore can provide no relevant evidence as to whether the Rule 23

38

prerequisites are met. *See In re Corrugated Container Antitrust Litig.*, 756 F.2d 411, 418–19 (5th Cir. 1985) ("An opt-out plaintiff is ***not*** a party to the class action.") (emphasis added). Indeed, the question of whether class issues predominate over individual issues is shown by evidence that the *proposed class* is sufficiently cohesive to warrant adjudication by representation. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); Fed. R. Civ. P. 23(b)(3) (requiring "questions of law or fact common *to class members* predominate over questions affecting only individual members") (emphasis added). Thus, evidence from individuals who are no longer members of the class is irrelevant to the Rule 23 inquiry. While circuit courts have not ruled on the use of evidence from opt-out individuals, district courts have declined to give little if any evidentiary weight to testimony from individuals who are no longer members of the class. *See Pruess v. Presbyterian Health Plan, Inc.*, 745 F. Supp. 3d 1218, 1239 (D.N.M. 2024).

### B. Reliance on "Happy Camper" Declarations is Disfavored.

"Happy camper" declarations are those that are "submitted by companies with potentially significant influence over the workers who sign them." *Nash v. Horizon Freight Sys. Inc.*, No. 19-CV-1883-VC, 2020 WL 7640878, at *2 (N.D. Cal. Dec. 23, 2020). As such, courts view the declarations with suspicion and skepticism in the context of class certification in wage and hour cases. *See Pruess*, 745 F. Supp. 3d at 1239; *Nash*, 2020 WL 7640878, at *2; *DePyper v. Roundy's Supermarkets,*

*Inc.*, Nos. 20-CV-2317, 22-CV-2084, 2025 WL 2430460, at \*8 (N.D. Ill. Aug. 22, 2025) (recognizing that "'happy camper' declarations must be taken with a grain of salt, as current employees have an incentive to speak favorably about their employer"); *Hale v. Brinker Intl., Inc.*, 765 F. Supp. 3d 904, 917 (N.D. Cal. 2025) (finding that "courts should be very, very careful before relying too much on 'happy camper' declarations from existing employees"); *see also Brown*, 785 F.3d at 914 (courts should proceed with "eyes open to the imbalance of power and competing interests" when "assessing the probative value" of statements from current employees).

## C. **The District Court Relied Overwhelmingly on Opt Out Individuals and "Happy Camper" Declarations to Decertify the Automatic Deduction Class.**

Instead of viewing Defendant-Appellee's opt out and "happy camper" declarations with skepticism, the district court relied on them—almost exclusively— to decertify the Automatic Deduction class. The declarations cited by the district court for the proposition that some individuals did not perform work during meal periods are from opt-out plaintiffs. JA2743 (citing JA2348, JA2379-2380, JA2511, JA2397, JA2479). Each of these declarations is from an individual who opted out of the lawsuit in 2021, long before the district court's decertification order. JA2349, JA2380, JA2511, JA2397, JA2480. Given that these individuals are no longer members of the class, their testimony is "entitled to little, if any, weight." *Pruess*,

40

745 F. Supp. 3d at 1239 (deposition testimony of individual who is no longer a member of the class given little evidentiary weight by district court). Moreover, when noting that individual issues are apparent with respect to work during meal breaks, the district court cited only to declarations from current GKN employees. JA2743 (citing JA2345-2350, JA2377-2381, JA2509-2512, JA2395-2398, JA2476-2481). This is problematic given that current GKN employees may have an incentive to speak favorably about their employer. *See Brown*, 785 F.3d at 914.

While it may be appropriate for the district court to *consider* the opt out and "happy camper" declarations to some extent, relying on them "too much" is a clear abuse of discretion, *see Hale*, 765 F. Supp. 3d at 917, and here, the district court did just that. JA2743 (citing JA2345-2350, JA2377-2381, JA2509-2512, JA2395-2398, JA2476-2481). Additionally, nowhere does the district court assess the probative value or reliability of these statements as compared to other evidence in the record. *See Lyngaas v. Curaden Ag,* 992 F.3d 412, 429 (6th Cir. 2021) (noting that, while a district court can consider all evidence when deciding certification issues, it is appropriate to grant each piece of evidence the appropriate weight). As discussed further below, the record includes extensive common evidence that employees worked through their lunch breaks. Accordingly, Plaintiffs-Appellants ask this Court to find that the district court's reliance on opt out and "happy camper" declarations to decertify the Automatic Deduction Class was an abuse of discretion.

41

**D. <u>Despite Finding Record Evidence to Support the Certification of Plaintiffs-Appellants' Automatic Deduction Class, the District Court Ignored the Same Evidence and Relied Entirely on Irrelevant Declarations from Rule 23 Class Members Who Excluded Themselves from the Action.</u>**

The district court found that issues common to the Automatic Deduction Class do not predominate over individual issues. JA2743. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products,* 521 U.S. at 623. Thus, Plaintiffs-Appellants must show that there are legal and factual issues common to the putative class that predominate over individual issues. In other words, to show predominance, Plaintiffs-Appellants must provide common evidence that employees worked through lunch and that, despite working through lunch, a lunch break was automatically deducted from their pay.

Here, the record is replete with such representative testimony. JA2273 (district court order identifying myriad evidence of employees working during unpaid meal breaks); *see also* JA1808-1809 ("[O]ut of working seven days, I want to say five of them, you know, we was eating meals in the cell."); JA592 (describing that the ability to take a meal break depended on how machines were running and they typically either had to eat food on the floor or not take a break); JA1372-1374, JA1156-1157; JA971; JA1624 ("[T]he whole plant had to [work through lunch breaks]"); JA1433-1435; JA1719-1720; JA1239 (lunches lasting ten to twenty

42

minutes); JA1241; JA2608-2609 (common practice for employees to skip lunch); JA2593 (typically working through all or most of the lunch break); JA2585; JA2579; JA2573-2574.

In decertifying the Automatic Deduction Class, the district court ignored this evidence. Instead of weighing this evidence against the declarations from opt-out individuals and "happy camper" declarations provided by Defendant-Appellee, the district court merely relied on the opt out and "happy camper" declarations to decertify the Automatic Deduction Class. As outlined above, Defendant-Appellee had the burden to show the motion for decertification should be granted. *See Day*, 827 F.3d at 832 (holding that the proponent of the motion for decertification bears the burden of showing it should be granted). Plaintiffs-Appellants contend that the use of opt out and "happy camper" declarations to suggest individual issues predominate does not meet the rigorous requirements of Rule 23 (a) and (b). The district court's reliance on these declarations to support its decertification order was an abuse of discretion and the district court's decision should be reversed and remanded for further proceedings.

**V.      THE DISTRICT COURT ERRED IN DECERTIFYING THE FLSA COLLECTIVE ACTION BY DISREGARDING COMMON EVIDENCE THAT PLAINTIFFS-APPELLANTS WERE PERFORMING COMPENSABLE WORK.**

Courts consider three factors when ruling on a motion for decertification of a collective action pursuant to the FLSA: (1) the factual and employment settings of

43

individual plaintiffs; (2) whether defendants have presented individualized defenses; and (3) fairness and procedural considerations. *See Morgan*, 551 F.3d at 1261; *Halle*, 842 F.3d at 226. The district court found that individualized inquiries would be necessary to assess Defendant-Appellee's liability because there is variable testimony regarding the *type* and *length* of activity that took place pre- and post-shift. JA2735-2737. However, there is common evidence that the activities being performed pre- and post- shift were compensable as defined in *Perez v. Mountaire Farms, Inc.,* 650 F.3d 350 (4th Cir. 2011).[10] Moreover, any variation in the length of compensable activities performed by Plaintiffs-Appellants is a question of damages, and the need for individualized inquiry into damages does not preclude certification. *See Campbell*, 903 F.3d at 1116. Given these errors, the district court's decertification of the FLSA collective action was erroneous and should be reversed and remanded for further proceedings.

    A. **There is Common Evidence that Plaintiffs-Appellants Performed Compensable Pre- and Post- Shift Work.**

---

[10] *See* JA1134-1136 (working on machinery before the start of the shift); JA615-617 (identifying bad machine parts pre shift); JA628 (checking gauges was "pre-work"); JA925 (having group meetings before the start of the shift); JA1312 (ensuring machines were running); JA1440-1441 (getting gloves on and getting machine started); JA1033-1034 (cleaning oil pads); JA1199-1200 (staying late to repair machines); JA1617 (describing post-shift duties such as cleaning and doing paperwork); JA1734 (cleaning, taking off protective equipment).

As pointed out by the district court, whether Plaintiffs-Appellants are entitled to compensation depends on whether their pre- and post-shift work was compensable. JA2735. In *Perez*, this Court held that preliminary and postliminary activities are compensable if they are "integral and indispensable" to the employee's principal activities. *Perez*, 650 F.3d at 363 (quoting *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956)). *Perez* indicated activities are "integral and indispensable" where: (1) the activities are necessary to the principal work performed and (2) the activities primarily benefit the employer. *See Perez*, 650 F.3d at 366.

### i. Plaintiffs-Appellants Performed Work That Was Integral and Indispensable to Their Principal Activities.

Plaintiffs-Appellants performed pre- and post-shift work that was necessary to their principal work activity of operating and repairing manufacturing workstations and that was ultimately to the benefit of Defendant-Appellee. *See Perez*, 650 F.3d at 366. First, the evidence suggests Plaintiffs-Appellants' pre- and post-shift work was necessary to the principal work activity, meaning it was "required . . . by the nature of the work performed." *Perez*, 650 F.3d at 366. Activities similar to those performed by Plaintiffs-Appellants have been deemed necessary to the principal work activity by circuit courts.[11] *See, e.g.*, *id.* at 367 (donning and

---

[11] JA280 (describing various pre-shift duties); JA1134-1136 (working on machinery before the start of the shift); JA615-617 (identifying bad machine parts pre shift);

45

offing protective equipment is necessary to principal work activity); *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 397–401 (5th Cir. 1976) (cleaning and doing paperwork were integral and indispensable activities); *Cadena v. Customer Connexx LLC*, 51 F.4th 831, 837 (9th Cir. 2022) (preparation of equipment necessary to perform principal activity is compensable); *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1280 (10th Cir. 2020) (pre-shift meetings and briefings were necessary to principal work activity). Similarly, these activities have been found to primarily benefit the employer. *See, e.g., Perez,* 650 F.3d at 367; *Dunlop,* 527 F.2d at 401.

### ii. The District Court Ignored Common Evidence That Plaintiffs-Appellants Performed Compensable Pre- and Post-Shift Work.

Instead of concluding that there was common evidence of compensable activity, the district court took issue with the differences in pre- and post-shift activities. JA2735-2737. In other words, the district court asked the wrong question:

---

JA628 (checking gauges was "pre-work"); JA925 (having group meetings before the start of the shift); JA1312 (ensuring machines were running); JA2589-2590 (attending meetings); JA2597-2598 (doing paperwork, checking machines and inventory); JA2606 (documentation); JA2619 (conducting "hand off" meeting from previous shift); JA2626, JA2633 (donning equipment); JA1440-1441 (getting gloves on and getting machine started); JA1033-1034 (cleaning oil pads); JA1199-1200 (staying late to repair machines); JA1617 (describing various post-shift duties such as cleaning and doing paperwork); JA1734 (cleaning, taking off protective equipment); JA2589-2590 (running inspections and reports); JA2598 (post-shift paperwork); JA2606 (post-shift paperwork); JA2619 (cleaning, inputting information); JA2627 (post-shift cleaning); JA2649-2650 (completing inspections, submitting reports).

46

the question was not whether Plaintiffs-Appellants performed *the same compensable work activity* but whether Plaintiffs-Appellants *performed compensable pre- and post-shift work at all. See Cadena*, 51 F.4th at 838 (a "key question" under the FLSA is whether employee duties are compensable); *Perez*, 650 F.3d at 363 (question of liability under the FLSA turns on whether preliminary and postliminary activities are compensable). As identified above, there is myriad common evidence that Plaintiffs-Appellants performed compensable preliminary and postliminary work.[12] Any difference in the *type* of compensable activity performed does not negate the central question of whether Plaintiffs-Appellants conducted compensable work for which they were not paid.[13] *See Perez*, 650 F.3d at 363 (liability under the FLSA turns on whether preliminary and postliminary activities are compensable); *Klick v.*

---

[12] JA1134-1136 (working on machinery before the start of the shift); JA615-617 (identifying bad machine parts pre shift); JA628 (checking gauges was "pre-work"); JA925 (having group meetings before the start of the shift); JA1312 (ensuring machines were running); JA1440-1441 (getting gloves on and getting machine started); JA1033-1034 (cleaning oil pads); JA1199-1200 (staying late to repair machines); JA1617 (describing various post-shift duties such as cleaning and doing paperwork); JA1734 (cleaning, taking off protective equipment).

[13] The district court's analogy to *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178 (3d. Cir. 2019) is inapposite. First, *Ferreras* relates to Rule 23 class certification, not certification of a collective action pursuant to the FLSA. *Ferraras*, 946 F.3d at 180. Moreover, while the court cites *Ferreras* for the proposition that there was variability in what employees were doing before their shifts started, *see* JA2736, in *Ferraras*, that variation included *a lot* of non-work activity including personal activities, watching TV, and chit chat. *Ferraras*, 946 F.3d at 181. Here, the variation in activity pointed out by the district court is a variation in type of *compensable* work activity. JA2736 (citing activities such as starting paperwork, replenishing supplies, and checking on machines).

*Cenikor Found.*, 94 F.4th 362, 372 (5th Cir. 2024) (members of a collective action do not need to be "identically situated"); *Landis v. Elevance Health Cos.*, No. 4:23-CV-5; 2025 WL 2557193, at *7 (E.D.N.C. Aug. 22, 2025) (differences in activities performed by plaintiffs do not negate the ultimate question of exemption status); *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 474 (E.D. Va. 2014) ("A collective action does not necessitate that 'there be no differences among class members.'" (quoting *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 832 (E.D. Va. 2008))). For example, in *Aguilar*, the Tenth Circuit found various pre-shift activities, such as briefing and picking up equipment, to be compensable. *Aguilar*, 948 F.3d at 1280. The court found these activities compensable, despite the fact that only "some officers" performed certain activities or that activities varied day-to-day. *See id.* at 1274. Similarly, here, Plaintiffs-Appellants' compensable duties may have varied day-to-day or between employees, but that *does not negate* that they were compensable, or, more importantly for the purposes of decertification, that there was *common evidence* that they were compensable.[14]

---

[14] In its decertification order, the district court does not suggest that any of the activities performed by Plaintiffs-Appellants are non-compensable, in fact, the district court performed no inquiry into whether the aforementioned activities were considered compensable pursuant to *Perez*. JA2735-2739. Of the few pieces of evidence cited by the district court for the proposition that compensable pre- and post-shift work was not performed, several are from opt-out plaintiffs. JA 2736 (citing, for example, JA2446-JA2451). As identified above, testimony from opt-out plaintiffs should be given little, if any, weight by courts. *See Pruess*, 745 F. Supp.

48

### iii. The Record Includes Representative Proof That Plaintiffs-Appellants Were Engaged in Compensable Activities, Consistent with the Supreme Court's Holding in *Tyson Foods*.

While the district court found that the "record does not contain representative proof that employees were all engaged in compensable activities," this finding heightens the standard of proof set out in *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016). In *Tyson Foods*, the United States Supreme Court held that the experiences of a subset of employees who performed similar work in the same facility under the same policy can be probative of the experiences of all employees. *See Tyson Foods*, 577 U.S. at 459; *Monroe,* 860 F.3d at 407–08 ("In FLSA cases, the use of representative testimony to establish class-wide liability has long been accepted."); *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985); *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997).

Here, Plaintiffs-Appellants were subject to the same common practice of time rounding and/or shaving. JA352, JA652-653, JA660. As cited above, there is common, representative testimony indicating that Plaintiffs-Appellants performed compensable pre- and post-shift work that is probative of the experience of all employees and thus could be used to demonstrate liability and damages. Given the

---

3d at 1239 (deposition testimony of individual who is no longer a member of the class given little evidentiary weight).

49

holding in *Tyson Foods* and the clear common evidence of compensable preliminary and postliminary work activities, the district court abused its discretion by decertifying the collective based on the need for fact-intensive individualized inquiries.

### B. The Need for Individualized Inquiries Related to Damages Does Not Preclude Certification.

The district court also took issue with the "individualized differences" in "how many minutes each employee spent performing compensable work before and after their scheduled shifts." JA2737. At the outset, this finding is problematic because "[a] showing that members of a collective are similarly situated does not require members to be identically situated." *Klick*, 94 F.4th at 372. Moreover, the amount of compensable work performed relates to the issue of damages. *See LaFleur*, 30 F. Supp. 3d at 474 (issues related to the "quantity and timing" of work is important for a "damages determination"). While this Court has held that the need for individualized inquiries into damages does not negate commonality in the context of Rule 23 class actions, that holding has not been extended into the context of collective actions pursuant to the FLSA. *See Gunnells v. Healthplan Servs. Inc.,* 348 F.3d 417, 429 (4th Cir. 2003) ("[T]he need for individualized proof of damages alone will *not* defeat class certification."); *Brown*, 576 F.3d at 159. It stands to reason then, given the "more forgiving standard of section 216(b)," that "[i]ndividual damages amounts cannot defeat collective treatment." *See Campbell*, 903 F.3d at 1117.

50

Indeed, it is well-established by other circuits and courts within the Fourth Circuit that individualized inquiries related to damages do not preclude FLSA collective action certification. *See id.* ("Nor are individualized damages calculations inherently inconsistent with a collective action."); *La Fleur,* 30 F. Supp. 3d at 474 ("A collective action does not necessitate that 'there be no differences among class members,' nor does it prohibit individualized inquiry 'in connection with fashioning the specific relief or damages to be awarded to each class member.'" (quoting *Houston*, 591 F. Supp. 2d at 832)); *Regan v. City of Charleston*, No. 2:13-CV-3046-PMD, 2015 WL 6727079, at *4 (D.S.C. Nov. 3, 2015) (dissimilarities in hours worked and amount of damages among firefighters does not warrant decertification of a conditionally certified collective action); *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, No.3:12-CV-596, 2015 WL 1346125, at *16 (W.D.N.C. Mar. 24, 2015); *Landis*, 2025 WL 2557193, at *9. Given the ample case law on this issue, it was legal error—and thus abuse of discretion—for the district court to decertify the collective action on the grounds that individualized inquiries would be needed to assess the amount of time spent performing compensable work. JA2737; *see Campbell*, 903 F.3d at 1116 (finding the district court's emphasis on the need for individualized damages calculations improper). Accordingly, Plaintiffs-Appellants request this Court reverse and remand the district court's order for further proceedings.

51

## CONCLUSION

The district court abused its discretion when decertifying Plaintiffs-Appellants' class and collective actions. Based on the record and the argument presented herein, this Court should hold and affirm as follows:

(1)    The district court erred in decertifying the Rounding Class by improperly conflating (or equating) the legal standard for decertifying an FLSA collective with the more stringent legal standard for decertifying a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

(2)    The district court erred by prematurely decertifying the Automatic Deduction Class without allowing Named Plaintiffs to distribute Notice pursuant to Rule 23 (c)(2)(B).

(3)    The district court erred in decertifying the Automatic Deduction Class by relying overwhelmingly on testimony from opt out individuals whose declarations should be given little to no weight.

(4)    The district court erred in decertifying the FLSA collective action by disregarding *common* evidence that Plaintiffs-Appellants were performing compensable work.

Accordingly, the district court's order granting Defendant-Appellee's motion for decertification of the class and collective action should be reversed and remanded for further proceedings.

52

## REQUEST FOR ORAL ARGUMENT

As Plaintiffs-Appellants raise an issue of first impression for this Court, Counsel for Plaintiffs-Appellants respectfully request oral argument on this matter. Oral argument would help establish and clarify the rule of law, providing guidance about whether the legal standards for decertifying an FLSA collective action and a Rule 23 class action can be equated. This issue has been decided by multiple circuits around the country with varying outcomes, making it an optimal issue for oral argument.

Respectfully submitted,

/s/ *Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Laura Fisher (NCSB No. 62357)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
215 S. Academy St.
Cary, NC 27511
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
lfisher@gildahernandezlaw.com

*Attorneys for Plaintiffs-Appellants*

53

## CERTIFICATE OF COMPLIANCE

1.    This brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word, Times New Roman, 14 point.</u>

2.    Exclusive of the table of contents; table of citations; statement regarding oral argument; certificate of compliance and the  certificate of service, this Opening Brief of Appellant contains <u>12,003 words.</u>

I understand that a material misrepresentation can result in the court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and a copy of the word or line printout.

November 24, 2025

<u>/s/ *Gilda A. Hernandez*</u>
Gilda A. Hernandez (NCSB No. 36812)
Laura Fisher (NCSB No. 62357)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
215 S. Academy St.
Cary, NC 27511
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
lfisher@gildahernandezlaw.com

*Attorneys for Plaintiffs-Appellants*

54

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. __25-2191__     **Caption:**   James Mebane v. GKN Driveline North American, Inc.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

> **Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

> **Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

> **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓]     this brief or other document contains _____12,003_____ [*state number of*] words

[ ]     this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓]     this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word 2016_____ [*identify word processing program*] in
14 Point Times New Roman_____ [*identify font size and type style*]; **or**

[ ]     this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Gilda A. Hernandez_____

Party Name Appellants_____

Dated: 11/24/2025_____

## CERTIFICATE OF SERVICE

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this November 24, 2025, filed the required copies of the foregoing Opening Brief of Appellant and Joint Appendix via the Court's CM/ECF system which will send notification of such filing to the following counsel:

Paul DeCamp
Adriana S. Kosovych
Epstein, Becker & Green
1227 25th St. NW
Washington, DC 20037
pdecamp@ebglaw.com
akosovych@ebglaw.com

*Counsel for Defendant-Appellee*

/s/ *Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Laura Fisher (NCSB No. 62357)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
215 S. Academy St.
Cary, NC 27511
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
lfisher@gildahernandezlaw.com

*Attorneys for Plaintiffs-Appellants*